I'd like to reserve five minutes for rebuttal. Good morning, Mr. Chief Judge, members of the court. My name is Daniel Marks. I'm here with Nicole Young. We represent plaintiff John Kocienski. Obviously, he's the appellant. And the issue here is whether or not the district court erred in granting summary judgment in this case. We believe that the precedent of the United States Supreme Court, specifically the Tolan case, as well as the precedent of your circuit, the Francis B. Johnson case, would require this panel to reverse the order of the district court. As I'm sure you're aware in Tolan, the United States Supreme Court, a mere five years ago, was concerned about district courts weighing evidence, giving disputed factual determinations to the moving party on summary judgment rather than the nonmoving party. And in that reversal of what was a relatively simple case, they admonished district court judges to not do that. This Court in Francis, which was decided a year later, picked up on the fact that normally a plaintiff opposing a summary judgment motion in a discrimination case does not have a heavy burden, because in this circuit, you've said that normally discrimination is a matter of intent, and there should be a full and complete trial and record. Here we have both direct and circumstantial evidence. In Francis, you allowed the accumulation of a court or a district court should look at both the direct and the circumstantial evidence. As I look at the evidence that was in front of the district judge, part of it is lots of comments about old man from several people repeated. The owner of the company early on said he should be fired because he's too old, although they didn't fire him. But also in the record, there's evidence that Mr. Kaczynski seriously annoyed Ms. LaRoccia by complaining repeatedly about the delay in implementing the new commission system. Correct. So assuming that both are motivations, that is to say, she gets really annoyed, and she's finally had enough, and says, OK, you're canned. But we also have a motivation that he's too old. What do we do with the mixed motive? So this is where I think the district court erred in looking at gross. The gross case dealt with a mixed motive jury instruction at trial, not the amount of evidence a plaintiff has to produce to rebut at the Rule 56 summary judgment stage. I think the district court, and you can look at your own Francis V. Johnson case, where you said in that case, it's just a matter of producing evidence to rebut the production by the defendant, and whether a reasonable jury could find, if they believe the plaintiff, a verdict. So gross comes into play at trial, not at this stage. And that was a major error by the district court. We had here direct comments by the number one person, Dominelli, the owner, and the number two person. In fact, we had more than stray comments. The district court called it stray. There were more than 100 comments. Lots of strays. That's a lot of stray comments. Additionally, to jump to the McDonnell-Douglas test, if the company fires somebody, and when the plaintiff asks, why am I being fired? They said, we don't have to give you a reason. They didn't use insubordination, you were a pain to, or disrespectful to the number two person, LaRocca. Then in the paperwork, it said, not a good fit. We know not a good fit is often a code for discrimination. The problem is, the defendant didn't come up with the five reasons until the litigation stage. It would be a different case, potentially, if at the time of termination, they said you were insubordinate. And obviously, if you had an insubordinate employee, why wouldn't a company say you're insubordinate? So that goes to pretext. It also goes to credibility determinations. And it shows our point that, if a reasonable jury, the only standard really is, could a reasonable jury, if you ignored the defendant's evidence, did the plaintiff produce enough evidence to beat back summary judgment? Could a reasonable jury on that record rule for the plaintiff? That's the standard in the circuit. Gross is really a red herring, because gross comes into play at time of trial, and the judge has to come up with the jury instructions at that point in time. And it's never really been a but-for absolute, because we know there are various motivations and credibility determinations in any trial, and the jury has to make those determinations. So the fact the judge pulled gross, essentially, out of thin air and used that as the basis to grant it, meant the judge here, unfortunately, ignored over 100 comments. There were comments made by the decision-maker, Dominelli, himself. Dominelli called Kaczynski's supervisor, Steve Johnson, who was the VP of sales, and said, I think he's too old, he doesn't have the energy, we should fire him. What's the best evidence you have that's in proximity to the termination of a stray remark? I mean, the Dominelli comment was sometime before, and Johnson said, no, you can't do that. Well, the whole tenure, the whole, unlike a lot of other cases, this is a 17-month employment. So you could argue, under Francis, proximity is there, because from day one — I'm just — what do you have that's in close proximity to the termination? The day before, they called him old man. LaRocca called him an old man. But in training, they said, I think you're too old to cut — they asked him, are you too old to cut closed deals? Then a few months later, Dominelli called Johnson and said, fire him, he doesn't have the energy. They kept calling him old man throughout, and in fact called him an old man the day before. And this is by the number one and number two people. The case — The odd thing about this case, in contrast with a lot of age discrimination cases, is this isn't a case where somebody's been with a company for a long time. He was hired after he had retired. Right. So you start off with the fact that he is an older employee in this corporation, and it's a short — relatively short period of employment. Right, but — So what do we do with that? I think — And what the district court did, essentially, was to apply the same — the inference, because — the same actor inference. I'm not sure that quite fits here, but it's kind of a — it's analogous. Well, the same actor rule doesn't apply, because the evidence that we produced is that Steve Johnson hired the plaintiff. Right. They wanted his contact. Steve Johnson also said, in his deposition, plaintiff was a great salesperson. He was one of the top performers. So you have an older man, 64 years old, as a top performer. He's fired and replaced by a 32-year-old woman with absolutely no sales experience at all. The reasons given were inconsistent. That goes to pretext. The comments were made throughout. It's not a case where you have a comment a year before. The cases cited by the district court, the Republic Services, there were one or two comments, not a hundred. I think in the Nels case and the Nesbitt case, you had indirect comments, general comments, not by the decision-maker, or there was one comment about gray hair. Those cases are not at all on point to this case where there are hundreds of comments. I think the proximity, if you read Francis v. Johnson, we have more evidence than this Court had in Francis where they reversed the district court. We have a lot more comments. I think we have at least a reasonable amount of proximity. They took it. It looks like they didn't like from day one that he was old, Dominelli and LaRocchia. Johnson hired him. They then, the company, got the benefit of his contacts, all the sales he made of casinos. This is a company that was putting these ATMs in casinos, which is a big business in Nevada. So they came in and put, he used all his contacts to sign deals. They were supposed to have this new compensation plan. He was complaining about that plan, but the number one guy, Mr. Dominelli, admitted that number two person, LaRocchia, had dropped the ball on that plan, and that could have affected the company because other salespeople of whatever age were leaving. So after they took his contacts, our position is the true feeling of the company, anti-age bias of Dominelli and LaRocchia, kicked in and they terminated him. You know, why is your narrative not consistent with the following? That is to say, they knew he was old. They hired him despite the fact that he was old. The reason they wanted him was that he was a good person, with lots of contacts. They got the advantage of all of the contacts, and then they canned him. They hired him despite the fact that he was old. They hired, they fired him when he was old, but their reason for hiring and their reason for firing was, we want your contacts. We now have your contacts. Thanks very much, you're gone. The reason is Steve Johnson hired him. The people that ultimately fired him was LaRocchia and Dominelli, and they were concerned from day one, which is really important, that in training and right away, they were saying, are you too old? Do you have the energy? Can you close deals? Is there another response to what I just said? That, well, if that was the reason, they should have said so. Obviously. Maybe they're embarrassed to say that that's what they did. They squeezed the lemon, they got the juice and now you're gone. Maybe they didn't want to say that because they would be somehow embarrassed that that was what they did. Why not just say insubordination or why not say he was a troublemaker on the compensation plan and he sowed dissent among the employees? That's what they said in litigation. And obviously, that would be a legitimate reason. But then we came back and said, you never said any of that while he worked there. You never said it in the termination paperwork. This is a regular company. You're not talking about just some mom and pop. They have paperwork. The paperwork says not a good fit. That goes to pretext. If you follow. You're down to about four and a half minutes. If you want. I just want to say one last thing. If you follow Francis and that's a recent Ninth Circuit case, we have significantly more evidence than you found enough to reverse the district court in Francis. So I would ask that based on the totality of the record, it be reversed for a trial. Thank you, counsel. Good morning, Robert Rosenthal, appearing on behalf of the appellee and defendant NRT Technologies. I'd like to address a few of the points that opposing counsel raised most. I think most importantly is the single actor issue. And opposing counsel says that Mr. Johnson was the hiring party. But the facts in this case point absolutely opposite to that. Well, it depends on what you mean by hiring party. I mean, there may be somebody who's the hiring party because he signs off on it. But there may be somebody else who's actually the motivator, who's responsible for the hiring. And that looks like Mr. Johnson. Mr. Johnson surely was the recruiter. He brought him to the table. However, he was the recruiter. He sponsored if he wanted him and the higher ups signed off. So I'm not sure the higher ups simply signing off makes them the hiring person for purposes of this rule. Well, in order to be hired, Mr. Kuczynski also had to interview after the recruitment. He had to interview with Mr. Johnson's boss, who was the head of NRT Technologies' sales force throughout the country, which was Rosa Larickia. I get that. And is this rule a formalistic rule or is it a functional rule? I believe it's a functional rule. Who was really responsible for the hiring? Do we look at that or do we look at the formalistic, the top guy has to sign off? No, I think it's functional. But Larickia, he wouldn't have been hired, but for Larickia's okay. She had to approve of his hiring. Oh, I get that. And of course, followed by that was Ms. Larickia's sending Mr. Kuczynski all of the hiring documents signed by her, not Mr. Johnson. And I think that's pretty telling. I get that. Also, Mr. Johnson, of course, testified that he reported to Ms. Larickia and she was his boss. So his hiring, Mr. Kuczynski's hiring would not have happened, but for Ms. Larickia's approval. Of course. Even if we grant you the same actor inference, that doesn't guarantee, or it doesn't automatically mean that you get summary judgment. If there's other evidence from that could overcome that inference and why aren't the whole series of comments and in particular, the owner of the company saying, we ought to fire him because he's too old. Why isn't that evidence that could allow a jury to conclude that in fact he was fired because they thought he was too old? Well, one, we dispute that that ever occurred. However, be that as it may, that constitutes, frankly, a stray remark at the commencement of employment. And there's no nexus between that comment and his continued work for more than a year after before his termination. And his termination was clearly tied to insubordination and of abuse of his superior. What is your understanding of the distinction between a stray remark and a non-stray remark, direct evidence of discrimination? Well, I think it's fair to say that many of the holdings are kind of all over the place on that issue. But a stray remark can be a remark that is not tied to the actual adverse employment action itself. So for example, calling Mr. Kaczynski old man on several occasions would be a stray remark because it's not directly stated, we are firing you because you are old. That would be more than a stray remark. Nobody would ever say that. I mean, really, if they're in the right mind. But I think, you know, here, you've got a good argument on stray remarks, except there are so many of them on old man. But getting back to Judge Miller's question, why isn't that the owner of the company says, I think you should fire him because he's too old. Why isn't that enough to establish a genuine issue of material fact on pretext? Because it's not tied. It's so remote in time to the termination itself that it bears no nexus to the action. And there are plenty of cases out there that say it's when it's too remote in time, it constitutes a stray remark and can't be part of the process. You know, there's some cases out there, however, not necessarily precisely this context that say, well, proximity in time is one factor. But there's an old saying about revenge is a dish best enjoyed cold. I mean, people take their time sometimes. And the fact that it might have been, and here we're not talking 20 years earlier, the fact that it might have happened early on and assuming, of course, assuming that it's true, that the head of the company says, he's too old, I want him fired. That doesn't just disappear. That's true. I would agree with that in principle. But that's really, those aren't the facts here. Mr. Dominelli, who was 66 at the time that Mr. Kuczynski was hired and who was the boss of the company, first of all, he disputes that he ever said that. I get that. But secondly, again, he continued to work without issue until the last two months of his employment. Ms. Luricchia never had a problem with him throughout his employment. Mr. Dominelli never had an issue with him until Ms. Luricchia told him about what had been going on in January 2015. But then that turns it into a mixed motive case. And again, there's no, I don't believe there's any mixed motive here. The motive for the termination was plain and simple, had nothing to do with discrimination. It only had to do... What do you do with the sort of the straw that broke the camel's back problem? Is the straw the only thing or is it the other weight that was already there? I mean, we've got multiple causes. I'm sorry, Your Honor, I'm not really understanding your question. There's a saying, the straw broke the camel's back. Right. And indisputably, it's the straw that broke the camel's back. But when you say what caused the camel's back to break, do you say, well, it's only the straw or is it the 20-pound lead weight that was already there? Obviously, it was both. We contend it was simply his behavior at the tail end of his employment. You're saying the straw that broke the camel's back was the only straw. That's it. All it took was the straw. There was nothing else. That's correct. And why is that not a question? I understand the argument. You might win, but why is that not an argument for the jury? I don't believe it's an argument for the jury because, again, we have the same actor here who also is being alleged. The person who was hired, Mr. Kaczynski, he was also the same person who was being alleged to have called him old man, not just in proximity to his termination, but throughout his employment. So for a year and a half, he called him that. Johnson testified that he hired him flat out. And Johnson, Johnson... I mean, it's a disputed fact on the record. Johnson says that he reported to LaRickia. Right. But he said, you know, the question, so did you hire Jack Kaczynski? Yes. And I think it would be fair to say that that was better character, should have been better characterized by him as recruitment. It was clear that he was the recruiter. I mean, if he hired her, he would have naturally signed the hiring documents. I mean, that's normally how it would work. Or someone from HR would have done it, certainly not Rosa LaRickia. And again, he never would have been hired except for LaRickia. He had to go up the food chain to interview with her. She had the ultimate authority to whether to approve or not approve that hiring. And furthermore, with respect to these comments about old man throughout the employment, Johnson, Mr. Kaczynski's good friend, is alleged to have called him old man or grumpy old man between 100 and 200 times throughout his employment. There's actually a case from California District Court, Contreras versus me, where the main actors apparently called the plaintiff old man or something similar to that, basically ageist comments, well over 50 times throughout the employment in a six-month period. And those were held to be stray remarks. So what do we do with the stated reason for termination being not a good fit? That doesn't, what does that mean? That's a valid question, but it doesn't really mean anything. I mean, most companies don't, there's no requirement that companies have to to an employee why they were fired. In fact, most companies give sort of a neutral decision because they don't want to get into a fight with the former employee. And it was only obviously because litigation ensued that the company had to give, obviously, a much more detailed discussion about why it had terminated Mr. Kaczynski. But there's certainly no law that requires an employer to provide a detailed response. Well, maybe in this context, I will tell you there are jurisdictions that would say that you are limited to the reasons you give at the termination. There are jurisdictions that say that and you can't manufacture reasons later to justify a termination. But there's nothing contradictory here. It said not a good fit, and the not a good fit could certainly encompass an employee verbally abusing a boss. I mean, since when does a company have to keep an employee on in employment when he's basically calling his female boss names? Mr. Johnson testified that Mr. Kaczynski was using racially derogatory remarks against other employees. I mean, it's not a nice employee. He might have been good at his job. NRT does not dispute that, does not have an issue with him conducting his job in an efficient and a good manner. But since when does a company have to keep an employee on the payroll when they're abusing the boss? Furthermore, Mr. Kaczynski also testified and admitted that he told Ms. LaRicchia he didn't trust her or Mr. Dominelli. So... Sounds like he was right. ...he didn't trust them for what, for no reason, because Ms. LaRicchia had told him time and time again that the new employment plan was going to be put in place retroactively, and it was. So his claimed lack of trust was completely misplaced. It was a fiction. There was nothing that it was based on. I mean, this all apparently fell apart during that period when he thought he was going to get the new plan implemented, and it wasn't implemented. And so he gets frustrated. He starts sending all the emails. Right. And she says, it's going to happen, going to happen. And he says, when? And, you know, I mean, you can see that there are both sides to that debate. For sure. And look, I think a reasonable response would have been frustration. I don't dispute that. And I think that's, again, reasonable. But it's not reasonable to be verbally abusing your boss and to say that you don't trust her or the head of the company. You don't believe what they're going to say. And then, I mean, name-calling and other things. I mean, since when does a company have to put up with that sort of behavior? I don't think it's reasonable. Legitimate, non-discriminatory reason. But then we get to, you know, the central question is, is there enough evidence here to create a travel issue effect on pretext? Well, I don't believe there is. Because, again, the main actors here, Dominelli and Lauricchia, as well as Johnson, all of them were well over 40 at the time that Mr. Kaczynski was hired. And then, obviously, he was hired at the age of 63 and terminated at the age of about 65. If they really had some sort of discriminatory animus based upon age, they wouldn't have hired him in the first place. So a lot of these allegations just simply don't add up in the scheme of things. I mean, the reasons that were proffered to the plaintiff do not contradict what's in the record. The record is that he wasn't a good fit. When explored more fully, that failure to be a good fit was that he continually harassed and verbally abused Ms. Lauricchia, told the boss, the two main bosses, he didn't trust them. He was continually telling Ms. Lauricchia how to do her job and sowing discontent among other employees. And, of course, he refused to provide his financial information, which was a stated term and condition of his employment. And he refused to do it. And basically, push came to shove. And after all of this time, Campina had enough and terminated him. But again, the same actor hired and fired. Is there evidence in the record? And if there is such evidence, I don't ask you to say you agree that it's probative or even true. But is there evidence in the record as to when Mr. Dominelli realized the age of Mr. Kaczynski? I don't know. I don't know the answer to that. However, I would certainly suspect it would have been at the time of their first meeting, which would have been in either October, November, or December of 2013. And was that after he was hired? They said the first meeting. Because my sense is it was a telephone interview. With Ms. Lauricchia. And then he went for training in Toronto, where the company is based. And that's when he met Mr. Dominelli personally. So that would have been after he was hired? Correct. So it's possible then, again, I'm not asking you to concede evidence and truth and so on, but it's possible then that Dominelli, as soon as he realizes how old an employee is that's just been hired, he says, I want him fired. That is to say he didn't hire him in spite of the fact that he was old. He didn't know that he was old. And one, there's no evidence in the record to that effect. But two, it is contradicted by the record of there being at least 15% of the workforce is over the age of 40. So there's a significant part of the workforce that is certainly protected. 40 looks like a teenager to me. Well, me too now in retrospect. I've got more than enough gray.  We have your order. Thank you, Your Honors. May I proceed? The argument by counsel is essentially arguing the merits as if we were in a judge trial or his argument of a jury trial. If you go to the order by the district court, the district court's order is flawed. In the direct evidence section, they cite the Republic case, which came out of Nevada. It was a district court case, not Ninth Circuit. And in that case, there were stray comments. It was only a couple of comments. The district court can't reconcile a couple of comments with hundreds of comments. So that analysis is flawed. Then the district court went into the McDonnell-Douglas analysis. And in the McDonnell-Douglas analysis, the district court listed the reasons in litigation provided by the defense. They ignored our argument completely that when a company gives wildly inconsistent reasons, meaning they give no reason at termination or you're not a good fit, and then they come up with six other wildly inconsistent reasons, this circuit in Coleman has said that's enough for pretext at least to go to a jury on the McDonnell-Douglas case. Counsel's argument about you don't have to give a reason just kind of belies the reality of economics. A company can have a policy that knew that other employers only get sort of name, rank, and serial number. That's been going on for a long time. But that doesn't mean in their own records or what they tell the employee when they terminate, they can certainly give the reason. If you're insubordinate, you would expect to be told you're insubordinate. His argument they don't have to do that because of litigation belies this whole concept. If they had a legitimate reason, they would have given at the time of termination. This is really a procedural issue. The district court credited every inconsistency, everything, any evidence that was contradictory, all inferences to the defense. When you read the opinion, the district court weighed the evidence. We know under this circuit and Tolan, we're not supposed to weigh the evidence. And the circuit has said, we have repeatedly held it should not take much for a plaintiff in a discrimination case to overcome a summary judgment motion because intent is clearly the issue. So if this court should reverse just analyzing the opinion because it failed to credit direct evidence that we had, including the decision maker, reasonable proximity. To answer your question, I believe Dominelli met Kuczynski for the first time at the training after he was hired and then immediately thought... The record says that he met him before. At the training, but not before he was... No, he said, I'm looking at the Dominelli deposition and said, did you know Jack prior to his being hired? The answer is yes. How did you know him? And it goes on to say, Steve recommended him because of his talent, et cetera, et cetera. Now, I don't know whether it was physically he met him or he knew of him, but... I think he knew of him. I think counsel agrees that they probably met at the training. And immediately after training, both Dominelli and Lirikia made age-based comments that are stereotypical. When Congress passed this, they were saying judge people essentially on their merits. If you can close deals at 80, you should be able to work. They both jumped to the conclusion, can you close deals? Do you have the energy at your age? That's clearly age-based animus. And the issue for you is only could a jury reach a conclusion or a verdict in plaintiff's favor on this record, and we would submit that it could. Thank you, counsel. Thank you very much for your time. Thank you both for your arguments today. The case just argued to be submitted for decision.
judges: Thomas, W. Fletcher, Miller